IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STERLING DEVELOPMENT, INC.,

        Plaintiff,

vs.                                               Civ. No. 07-0488 JCH/RHS

TERRACON CONSULTANTS, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

      This matter comes before the Court on Plaintiff Sterling Development, Inc.'s Application for Temporary Restraining Order and Injunction to Cancel Invalid Lien, filed November 7, 2007 [Doc. 27]. The Court conducted a hearing on the Application on November 8, 2007, at which Plaintiff was represented by Martin K. Holland, Esq., and Defendant was represented by Christopher D. Lee, Esq. and Robert M. St. John, Esq. The Court, having considered the Application, arguments of counsel, record, and relevant law, and being otherwise fully informed, for the reasons stated on the record at the November 8, 2007, hearing and for those contained herein, grants the Application for Temporary Restraining Order and Injunction to Cancel Invalid Lien.

      In the common law of the Tenth Circuit, the moving party seeking to obtain preliminary injunctive relief must establish: (1) a substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th

Cir. 1980). In cases where the movant has prevailed on the other factors, the Tenth Circuit uses a liberal definition of "probability of success." Specifically, the plaintiff need only raise "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.* (internal quotations omitted).

The Tenth Circuit has held, however, that the following types of preliminary injunctions are disfavored and require that the movant satisfy an even heavier burden: (1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief he or she may recover at the conclusion of a full trial on the merits. *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (citation omitted). These situations "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* (emphasis added). Moreover, "a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on [the Tenth Circuit's] modified-likelihood-of-success-on-the-merits standard." *Id.* at 976.

The first type of disfavored injunction is one that alters the "status quo." The "status quo" is "'the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing.'" *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001) (citation omitted). "In determining the status quo for preliminary injunctions, this court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Id.* (citation omitted) Another

source defines the status quo as the "last peaceable uncontested status existing between the parties before the dispute developed." 11A Charles A. Wright et al., Federal Practice and Procedure § 2948 at 136 (2d ed.1995).

The second type of disfavored injunction is one that is "mandatory" rather than "prohibitory." An injunction is mandatory rather than prohibitory if the requested relief "affirmatively requires the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005) (citations and internal quotations omitted). The third type of disfavored injunction is simply a preliminary injunction that affords the movant substantially all the relief he or she may recover at the conclusion of a full trial on the merits.

Plaintiff seeks a preliminary injunction canceling a lien pursuant to Federal Rule of Civil Procedure 65 and pursuant to New Mexico Statutes Annotated Section 48-2-9. Because Plaintiff seeks an injunction that alters the status quo and that is mandatory in nature, the Court must apply the heightened standard for granting a preliminary injunction articulated by the Tenth Circuit in *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*.

In applying the heightened standard, the Court must first determine whether Plaintiff has demonstrated a substantial likelihood that it eventually will prevail on the merits. Defendant filed its claim on lien on the ground that Plaintiff failed to pay Defendant for $70,909.85 in services. Those services, Defendant maintains, were provided pursuant to an oral contract in which Plaintiff agreed to pay Defendant for inspection of concrete grouting work completed by Hayward Baker. Plaintiff maintains that no oral contract or agreement existed and that the lien claim is therefore invalid.

The Court concludes that Plaintiff has demonstrated a substantial likelihood that it will eventually prevail on the merits of its claim that the lien is invalid. Courts will not apply the mechanics' and materialmen's lien statute "to create a lien where none exists or was intended by the legislature." *Lembke Constr. Co. v. J.D. Coggins Co.*, 72 N.M. 259, 262, 382 P.2d 983, 985 (N.M. 1963). The right to a lien is purely statutory and "is strictly construed as to persons entitled to its benefits," and a claimant therefore must bring itself clearly within the terms of the statute. *Id.* (citation and internal quotations omitted). "The court's function is not to create a lien. It can only declare and enforce an existing lien." *Id.* (citation omitted); *see also Vulcraft v. Midtown Business Park*, 110 N.M. 761, 765, 800 P.2d 195, 199 (N.M. 1990) (although lien statute is remedial and liberally construed, court will not apply liberal construction to create a lien where none is authorized) (citation omitted). Thus, a court will not enforce a materialmen's lien that is not valid and the mere filing of a lien does not give a claimant the right to foreclose the lien. *Cf. Branch v. Mays*, 89 N.M. 536, 540, 554 P.2d 1297, 1301 (N.M. Ct. App. 1976) (to establish a valid lien, burden was on claimant to prove that swimming pool heater was actually used in pool; lien was invalid from its inception because it was filed after claimant knew heater was not actually used).

The mechanics' and materialmen's lien statute provides for a lien as follows: "Every person performing labor upon . . . or who surveys real property has a lien upon the same for the work or labor done, for the *specific contract or agreed upon charge* for the surveying . . . whether done . . . or furnished at the instance of the owner of the building or . . . his agent." N.M. Stat. Ann. § 48-2-2 (emphasis added). Although the evidence presently before the Court indicates that Defendant provided Plaintiff with concrete grouting inspection services, the evidence does not tend to indicate that Defendant provided those services pursuant to a contract

4

or agreement.

Defendant maintains that Plaintiff entered into an oral contract with Defendant at a pre-construction meeting that took place prior to the time construction began on the project. Kevin Scott, an employee of Defendant, testified that there was a discussion at one such meeting as to who was going to be doing materials testing and other parts of the project. Mr. Scott stated that "at that time we were to have a contract with Jaynes Corporation [the proposed general contractor], rather than with [Plaintiff], so that everything could remain under one umbrella." Mr. Scott then testified that at either the same meeting or a subsequent meeting (unclear from the testimony) "it was made clear to myself and my materials manager . . . and Terracon that we would be doing the testing. That's how we proceeded." When asked whether Plaintiff specifically told him "to inspect the grouting work at the construction work," Mr. Scott responded, "Not in those words, no." When asked to explain the words Philip Sterling (one of the principals of Plaintiff) used, Mr. Scott testified, "In the meeting . . . Jaynes had asked who would be doing the testing. At that point, [Mr. Sterling] said, 'Terracon will be doing all of the testing.'" When the Court asked Mr. Scott whether the issue of the inspection of the compaction grouting was specifically discussed at the meeting, Mr. Scott responded, "No, not specifically."

Plaintiff does not dispute that it contracted with Defendant to perform *materials* testing on the steel and welding used in the construction process. It does dispute, however, that it contracted with Defendant to perform *concrete grouting* testing. "It is elementary in contract law that mutual assent must be expressed by the parties to the agreement." *Trujillo v. Glen Falls Ins. Co.*, 88 N.M. 279, 280, 540 P.2d 209, 210 (N.M. 1975). "When the minds of the parties have not met on any part or provision of a proposed contract, all of its portions are a nullity." *Lamonica v. Bosenberg*, 73 N.M. 452, 455, 389 P.2d 216, 217 (N.M. 1964); *see also Trujillo*, 88

N.M. at 280-81, 540 P.2d at 210-11 ("'The first requirement of the law relative to contracts is that there must be a meeting of the minds of the parties, and mutuality, . . . and in order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon.'") (quoting *West v. Downer*, 127 S.E.2d 359, 364 (Ga. 1962)). This mutuality requirement must be found in the objective manifestations of the parties. *Id.* at 281, 540 P.2d at 211. "'The apparent mutual assent, essential to the formation of a contract, must be gathered from the language employed by them, or manifested by their words or acts, and it may be manifested wholly or partly by written or spoken words or by other acts or conduct.'" *Id.* (quoting 17 C.J.S. Contracts § 32, at 640 (1963)).

Based on the evidence before the Court, the Court concludes that Plaintiff is likely to succeed on the merits of establishing that there was no meeting of the minds between the parties sufficient to form an oral contract. The evidence presently before the Court does not tend to establish that Plaintiff assented to the formation of a contract. Indeed, Mr. Scott himself conceded that the issue of concrete grouting inspection was not specifically discussed at the meeting during which the oral contract allegedly was formed. At that meeting, the evidence (even when viewed in Defendant's favor) demonstrates only that the parties discussed materials testing and/or testing generally. And, Plaintiff does not dispute that it hired Defendant to conduct materials testing. Accordingly, the Court concludes that Plaintiff is likely to establish that the parties did not use any language or otherwise manifest verbal assent to hiring Defendant to perform an inspection of the concrete grouting work.

The Court further notes that the evidence does not tend to establish that the parties' acts manifested such an agreement. The fact that Plaintiff observed Defendant on the premises during the concrete grouting work and that Plaintiff did not question why Defendant was on the

premises does not alone indicate an action manifesting an agreement.  Defendant had other written contracts with Plaintiff sufficient to explain its presence at the job site.  Moreover, Plaintiff reasonably could have assumed that Hayward Baker, the company Plaintiff hired to perform the soils compaction, hired Defendant to inspect Hayward Baker's concrete grouting work (which was used to compact the soil) in order to fulfill its contractual obligations to Plaintiff.

In addition, in all previous instances in which Plaintiff hired Defendant to perform work, for services of a significantly lesser value (approximately $5,400, $2,900, and $780, in contrast to $70,000), the parties executed a written contract.  Indeed, Mr. Scott testified that it was Defendant's procedure to require a written contract.  The evidence tends to establish that Plaintiff had no need for the concrete inspection services Defendant provided,[1] since Hayward Baker was required under its contract with Plaintiff to ensure that the concrete grouting effectively compacted the soil.  Based upon the evidence before the Court, the Court therefore concludes that Plaintiff has a substantial likelihood of prevailing on its claim that no contract or agreement existed for the $70,000 of work charged to Plaintiff.

The Court also concludes that Plaintiff is substantially likely to prevail on the merits of its claim under Section 48-2-9(B) to have the lien canceled.  Because Plaintiff has established that it is likely to prevail on its claim that the lien is invalid, the Court further concludes that Plaintiff need not post security pursuant to Section 48-2-9(B) in exchange for cancellation of the

---

[1] Defendant maintains that through discovery it intends to elicit evidence indicating that Plaintiff needs a concrete grouting inspection certificate in order to complete the project.  That evidence, however, is not before the Court, because discovery has not been completed.  The Court therefore does not consider this evidence in determining whether Plaintiff is likely to succeed on the merits.

lien. An award of security pursuant to Section 48-2-9(B) is premised on a valid mechanic's or materialmen's lien.

The Court next must determine whether Plaintiff has made a showing that it will suffer irreparable injury unless the injunction issues. Plaintiff has met this burden by presenting evidence that the Defendant's claim of lien has resulted in Plaintiff's lender refusing to fund the final draw request of approximately $500,000 for the project. The lender has taken the position that the filing of the lien claim is an event of default. The general contractor also has a lien against the property, but the contractor is willing to release the lien in exchange for the final draw of $500,000. There is not enough money from the final draw, however, to pay both the contractor and the Defendant. The general contractor has threatened to file a foreclosure action. The lender also gave the Plaintiff a deadline by which to have the liens removed and informed Plaintiff if the liens were not removed and the interest paid, it would initiate a foreclosure action.

The lender in fact initiated a foreclosure action on Monday, November 5, 2007, and declared a default on the $5.5 million loan. The loan has now been accelerated with eighteen percent interest. There is approximately $70,000 in arrears on the loan. Plaintiff presented evidence that if the Defendant's lien claim is not removed, the project will in all likelihood fail. Plaintiff argues that it cannot cure the default unless the property can be sold. The Plaintiff also maintains that the project cannot be sold without permanent financing and a sale is only likely if the buildings are fully leased. Plaintiff further argues that it cannot sell the property with a lien in place. Plaintiff also maintains that it cannot continue to pay tens of thousands of dollars every month in interest. Defendant has presented no evidence to the contrary. The Court therefore concludes that Plaintiff has satisfied its burden of demonstrating that it will suffer irreparable injury unless the injunction issues.

The Court also must determine whether Plaintiff has set forth proof that the threatened injury to it outweighs whatever damage the proposed injunction may cause Defendant. Plaintiff has set forth evidence demonstrating that it will be significantly injured if the lien claim is not removed. Defendant has not rebutted that evidence, and has presented no evidence indicating that it would be harmed. Rather, Defendant has only argued that if the lien claim is removed, Defendant may not be able to recoup the $70,000 Plaintiff allegedly owes, particularly if the project fails. The Court notes, however, that Defendant would have a remedy at law against Plaintiff. The Court therefore concludes that according to the evidence presented, the threatened injury to Plaintiff far exceeds that to Defendant.

The Court also must determine whether Plaintiff has made a showing that the injunction, if issued, would not be adverse to the public interest. The Court concludes that issuing the injunction and canceling the lien is consistent with the policies underlying New Mexico's lien laws and specifically Section 48-2-9. Issuing the injunction, therefore, is not adverse to the public interest. The Court further concludes that the public interest is served by issuing the injunction because of the potential injury (which far exceeds any injury to Defendant) not only to Plaintiff but to other parties involved in the project.

Finally, because of the disfavored nature of the injunction sought, the Court must ensure that Plaintiff has made a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course. The Court believes Plaintiff has satisfied this heightened requirement. Not only has Plaintiff made a strong showing with respect to the likelihood of success on the merits and with regard to the balance of the harms, the Court believes that the exigencies of this case strongly support granting Plaintiff an

9

extraordinary remedy.

Because Plaintiff has established each of the elements necessary to obtain a preliminary injunction, the Court grants the Application for Temporary Restraining Order and Injunction to Cancel Invalid Lien.  The Court further exercises its discretion pursuant to Federal Rule of Civil Procedure 65 and declines to require Plaintiff to post security.  The Court has considered whether the circumstances of this case justify leaving the Defendant bereft of security, and concludes that security is not justified in this case.  Defendant has presented no evidence of likelihood of harm to it by the waiving of the security requirement.  Plaintiff, on the other hand, has presented (unrebutted) evidence of a substantial likelihood of harm to it if it is required to post security.  The Court therefore declines to require Plaintiff to post security.

**IT THEREFORE IS ORDERED** that, as stated on the record in open court on November 8, 2007, Plaintiff Sterling Development, Inc.'s Application for Temporary Restraining Order and Injunction to Cancel Invalid Lien, filed November 7, 2007 [Doc. 27], is hereby GRANTED.

Dated this 16th day of November 2007.

                                                      JUDITH C. HERRERA
                                                     UNITED STATES DISTRICT JUDGE